IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERONICA PIERCE AND FLINT PIERCE,

    Plaintiffs,

vs.                                                                                             1:15-cv-758 LF-KBM

CONNIE CHENE, SHAY VANDERMEY,
TAMARA HENDERSON, CARLOS ROMERO,
all in their individual capacities,
AND THE GOVERNING COUNCIL FOR
ALICE KING COMMUNITY SCHOOL,

    Defendants.

## ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO DEFENDANT VANDERMEY

This matter comes before the Court on defendant Shay VanDerMey's Motion Asserting the Defense of Qualified Immunity or for Judgment on the Pleadings.  Doc. 22.  Plaintiffs Veronica and Flint Pierce oppose Ms. VanDerMey's motion.  Doc. 29.  Having considered the parties' submissions and the relevant law, I find that Ms. VanDerMey's motion for judgment on the pleadings is well-taken, and therefore grant it.

**I.**    **Factual Background**

In ruling on a motion for judgment on the pleadings, the Court must accept as true all facts alleged in the amended complaint.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  It also must view these factual allegations in the light most favorable to the plaintiffs.  *See id.*  Viewing the facts alleged in the amended complaint in this manner, the amended complaint establishes the following:

Ms. VanDerMey was a teacher at Alice King Community School (AKCS). Doc. 10 at 2, ¶ 5.[1] Plaintiffs Veronica and Flint Pierce's daughter attended AKCS, and Ms. VanDerMey was their daughter's teacher for the 2013–2014 academic year. *Id.* at 4, ¶¶ 1, 4. In early February 2014, Mr. Pierce contacted Ms. VanDerMey and informed her that his daughter had complained that another student had been harassing her for several months. *Id.* at 4, ¶ 5. Ms. VanDerMey responded that she had not seen any of the harassment, but that the other student came off "harsh at times." *Id.* 4, ¶ 6. Shortly thereafter, Ms. VanDerMey informed Mrs. Pierce that the other student had written the Pierces' daughter a "heartfelt note of apology." *Id.* at 5, ¶ 7.

Later in February, Mrs. Pierce informed Ms. VanDerMey that her daughter still was complaining that the other student was bullying her. *Id.* at 5, ¶ 8. Mrs. Pierce suggested that Ms. VanDerMey speak to the other student's parents. *Id.* The following day, Ms. VanDerMey responded to Mrs. Pierce by stating that in her view, both students were at fault. *Id.* ¶ 9. Mrs. Pierce was surprised by this response as she was extremely involved in her daughter's education, and Ms. VanDerMey had never before reported that the Pierces' daughter had been misbehaving. *Id.* However, Mrs. Pierce "was denied the opportunity to speak to Ms. VanDerMey" to discuss the issue when she picked her daughter up from school that day. *Id.* ¶ 10.

In mid-March 2014, the Pierces had a parent-teacher conference with Ms. VanDerMey. *Id.* ¶ 12. Ms. VanDerMey did not express any concern at this conference about the behavior of the Pierces' daughter. *Id.* She only complimented their daughter's behavior and academic performance. *Id.*

---

[1] The amended complaint has numbered paragraphs, but numbers 1 through 8 are used twice, first on pages 1 to 2, and again on pages 4 to 5. For the first eight paragraphs, this order will refer to both the page number and the paragraph number. For all paragraphs after 8, it will refer to just the paragraph number.

After the parent-teacher conference and continuing until April 1, 2014, the other student continued to bully the Pierces' daughter, and the Pierces' daughter reported each incident to Ms. VanDerMey.  *Id.* ¶ 13.  When Mrs. Pierce tried to contact Ms. VanDerMey to discuss a particular threat by the other student, Ms. VanDerMey did not respond.  *Id.*  On April 8, 2014, the Pierces' daughter reported that Ms. VanDerMey had made fun of her for picking her nose in class.  *Id.* ¶ 14.  When Mrs. Pierce sought clarification from Ms. VanDerMey regarding this incident, Ms. VanDerMey did not respond.  *Id.*  On April 9, 2014, Ms. VanDerMey emailed Mrs. Pierce and suggested that it might be in Mrs. Pierce's daughter's best interest to move to another classroom.  *Id.* ¶ 18.  The same day, when Mrs. Pierce went to pick her children up from school, she spoke to the other student's father about the conflict between her daughter and his son.  *Id.* ¶ 19.  The other student's father said that Ms. VanDerMey had told him that the Pierces' daughter was picking on his son and was fabricating the bullying allegations.  *Id.*

On April 15, 2014, defendant Connie Chene, the AKCS principal, sent an email to the Pierces instructing them to end all communication with Ms. VanDerMey.  *Id.* at 2, ¶ 4, ¶ 26.  On April 23, 2014, an Albuquerque Police Department (APD) officer informed the Pierces that Ms. VanDerMey and Ms. Chene were afraid of violence.  *Id.* ¶ 36.  The APD officer's incident report, however, revealed that the officer told Ms. VanDerMey and Ms. Chene that the Pierces' emails and their meeting with Ms. Chene and other school officials the previous day did not amount to harassment.  *Id.* ¶ 37.  Specifically, the officer stated, "I advised them [Ms. VanDerMey and Ms. Chene] that based on what was being described to me, the emails did not rise to the level of harassment.  I also advised [Ms. Chene] that her raising her voice towards [Mr. Pierce] did not rise to the level of harassment either."  *Id.*  According to the amended complaint, Ms. VanDerMey and Ms. Chene's report to the APD officer "was a clear attempt to

3

retaliate against the Pierces, was a misuse of the criminal process, and [] was just a step in their scheme to disenroll the Pierces' [daughter] from school because the Pierces never exhibited any violent behavior whatsoever." *Id.* ¶ 39.

Mrs. Pierce sent an email to Ms. VanDerMey saying that it was not fair to the Pierces' daughter for Ms. VanDerMey to cut off all communication. *Id.* ¶ 43. At the end of April, AKCS sent an email to the parents of all children in Ms. VanDerMey's class that Ms. VanDerMey was cutting off all communication via email with parents. *Id.* ¶ 44. This closed off all communication between Ms. VanDerMey and the Pierces; by this time the Pierces were not allowed to write to Ms. VanDerMey, nor were they allowed on campus. *Id.*

During the summer of 2014, the Pierces filed formal complaints with Albuquerque Public Schools (APS) and the New Mexico Public Education Department (PED) concerning the manner in which Ms. VanDerMey and another school official handled the Pierces' bullying reports. *Id.* ¶ 57. At the end of July, 2014, Mrs. Pierce inquired of an AKCS official whether Ms. VanDerMey still was employed at AKCS. *Id.* ¶ 62. The official told Ms. Pierce that Ms. VanDerMey was still at the school. *Id.* The next day, the official wrote to Mrs. Pierce to inform her that her inquiry as to Ms. VanDerMey's employment status was inappropriate, and that the sanctions against the Pierces would remain in effect. *Id.*

Two weeks later, on August 15, 2014, Ms. VanDerMey filed an application for a restraining order against the Pierces in the Bernalillo County District Court. *Id.* ¶ 76. Ms. VanDerMey filed the application despite the fact that the APD officer had told Ms. VanDerMey in April, 2014, that the Pierces' actions did not constitute harassment, and despite the fact that nothing of significance had happened since then. *Id.* The only noteworthy event since April had

been the Pierces' filing of their formal complaints against Ms. VanDerMey for the way she had handled their reports of bullying.  *Id.*

The day Ms. VanDerMey filed her application, the district court denied her request for a temporary restraining order.  *Id.* ¶ 77.  Five days later, an APD officer informed the Pierces that Ms. VanDerMey had filed an application for a restraining order against them.  *Id.* ¶ 79.

On August 27, 2014, the district court held a hearing on Ms. VanDerMey's application. *Id.* ¶ 91.  Ms. VanDerMey accused the Pierces of making false accusations against her, but said she was waiting for information from PED to know what those accusations were.  *Id.*  In describing the accusations, Ms. VanDerMey said,

> Well, I know they've gone to my governing board, the APS board meeting, and used my name.  They have gone to the AP[S] charter director and PED and have, you know put claims against me in regards to how I handle myself as a teacher, in regards to these bullying accusations.

*Id.*  The testimony disclosed that Ms. VanDerMey felt harassed and was concerned that the Pierces were inquiring about her continued employment at AKCS because she was worried that the Pierces would pursue sanctions against her and follow up on their complaints about her, not because of any fear for her safety.  *Id.*  Ms. VanDerMey did not file her application for a restraining order until after she knew that the Pierces had filed a PED complaint against her.  *Id.* On November 3, 2014, the district court entered an order dismissing Ms. VanDerMey's application for a restraining order.  *Id.* ¶ 95.

Ms. VanDerMey is named only in count I of the amended complaint.  *See generally* Doc. 10.  Count 1 alleges that Ms. VanDerMey and others violated the Pierces' First Amendment rights by filing an application for a restraining order "against the Pierces in retaliation for the Pierces' formal complaints against her for the manner in which she handled the instances of bullying involving their daughter and her personal treatment of their daughter including public

ridicule and intimidation regarding the incidents of bullying being reported." *Id.* ¶ 99. The amended complaint alleges that the Pierces' protected speech of making complaints concerning their daughter being bullied at school, and their complaints to the AKCS Governing Council, APS, and PED regarding Ms. VanDerMey's response to their complaints of bullying, substantially motivated Ms. VanDerMey. *Id.* ¶ 96. The Pierces allege that Ms. VanDerMey retaliated against them for engaging in protected speech by filing a request for a restraining order. *Id.* ¶¶ 96, 99. They further allege that their "complaints were petitions to the Government for a redress of grievances expressly protected by the First Amendment." *Id.* ¶ 99. They allege that Ms. VanDerMey's filing of the application "was unlawful and would chill an ordinary person in the exercise of first amendment rights," and that they suffered damages as a result. *Id.* ¶ 100.

## II.     The Amended Complaint Fails to Allege Facts that Would Establish that Ms. VanDerMey was Acting Under Color of Law.

Ms. VanDerMey argues that count I fails to state a claim under 42 U.S.C. § 1983 because she was not acting under color of law when she filed her application for a restraining order. Doc. 22 at 13–16. The Pierces respond that the allegations in their amended complaint are sufficient to establish that Ms. VanDerMey was acting under color of law when she sought a restraining order against the Pierces. Doc. 29 at 7–12. A careful review of the amended complaint, however, reveals that the Pierces have failed to allege facts that would satisfy the "under color of law" requirement.

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir .2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "'a court must accept as true all of the allegations contained in a

6

complaint,'" this rule does not apply to legal conclusions. *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id*. (citation omitted). A complaint survives only if it "states a plausible claim for relief." *Id*. (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc*., 708 F.3d 1141, 1146 (10th Cir. 2013). But a court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Id*. (internal quotation marks omitted) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir.2010)).

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must allege that a defendant acted under color of state law to deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). "[P]rivate conduct that is not 'fairly attributable' to the State is simply not actionable under § 1983, . . . however discriminatory or wrongful the conduct is." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citations and quotations omitted). It is "well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Id*. at 493. The key question is whether the state employee committed the tort "on account of the authority vested in the employee by the state." *Id*. It is the plaintiff's burden to

plead, and ultimately establish, "the existence of a 'real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Id.* at 494.

The amended complaint alleges that Ms. VanDerMey's act of retaliation was the filing of an application for a restraining order against the Pierces. *See* Doc. 10 ¶¶ 76, 99, 100. However, there is no allegation that Ms. VanDerMey exercised her authority as a teacher in applying for the restraining order. Indeed, it hardly seems plausible that she could do so. In seeking the restraining order, Ms. VanDerMey filled out and filed a form that is available to any member of the public. *See* Doc. 29-3.[2] Any private citizen may seek a restraining order against another person. *See* Rule 1-066 NMRA. The amended complaint is devoid of any allegation that Ms. VanDerMey used or misused any state authority she may have possessed in attempting to obtain a restraining order against the Pierces. *See Jojola*, 55 F.3d at 494.

This case is similar to *O'Connor v. Williams*, 2016 WL 4556336 (10th Cir. Feb. 5, 2016) (unpublished). There, the Tenth Circuit upheld summary judgment in favor of the defendant. The court held that the plaintiff had failed to state a claim for relief under 42 U.S.C. § 1983 because he could not establish that a Colorado state house representative who sought and enforced a restraining order against him acted under color of law. *Id.* at *3–4. The court viewed the issue as whether the state representative "used her authority—authority made possible only

---

[2] Document 29-3 is Ms. VanDerMey's Verified Application for Restraining Order, filed in the Second Judicial District Court on August 15, 2014. Although the Court typically will not consider documents outside the complaint when ruling on a motion pursuant to Rule 12(b)(6) or 12(c), Ms. VanDerMey's application for a restraining order is central to the Pierces' claim against her, there is no dispute regarding its authenticity, and it is a document of which the Court may take judicial notice. *See St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts . . . may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue"). Thus, the Court may consider her application in ruling on her motion. *See Berneike*, 708 F.3d at 1146.

because of her elected office—to do something an ordinary citizen can't do." *Id.* at *4. The court concluded that because the state representative "had the right, like any other Colorado citizen, to request assistance in serving [the protection] order," the plaintiff had failed to establish that the state representative acted under color of state law in obtaining and enforcing the order. *Id.*

The same is true in this case. The Pierces fail to allege that Ms. VanDerMey used her authority—authority made possible only because of her position as a teacher—to do something an ordinary citizen couldn't do. Ms. VanDerMey's ability to seek a restraining order against the Pierces had nothing to do with any authority she had as a teacher. It derived from the New Mexico rule that permits anyone to apply for such orders. *See* Rule 1-066 NMRA. There simply is no nexus between Ms. VanDerMey's application for a restraining order and her "badge" of authority as a teacher. The Pierces therefore have failed to state a claim for relief under 42 U.S.C. § 1983 against Ms. VanDerMey.[3]

The Pierces attempt to satisfy the "under color of law" requirement by asserting that they "clearly allege Defendant VanDerMey acted under color of law when she sought the restraining order because she acted in concert with the AKCS administrators and was motivated by Plaintiffs complaints to PED, the AKCS Governing Council, and APS." Doc. 29 at 7. Even assuming that this is true, as the Court must, these allegations still do not establish that Ms.

---

[3] In their response to Ms. VanDerMey's motion, the Pierces refer to an allegation that "Ms. VanDerMey acted in concert with other AKCS Defendants in a plot to disenroll the Pierces' children from AKCS," and cite to paragraphs 76, 101, and 102 of the amended complaint. Doc. 29 at 10. These paragraphs, however, make no such allegation. Further, count I alleges that Ms. VanDerMey's only act of retaliation was that she "filed a restraining order application against the Pierces." Doc. 10 ¶ 99. Thus, the Pierces' allegation in their response that Ms. VanDerMey was involved in a plot to disenroll the Pierces' children from AKCS cannot form the basis of the Pierces' First Amendment retaliation claim against Ms. VanDerMey. The Court therefore will not address the "disenrollment plot."

VanDerMey used or misused *her authority as a teacher* to attempt to obtain a restraining order. The amended complaint does not allege that Ms. VanDerMey had any special ability to obtain a restraining order by virtue of her position, or even because she acted in concert with AKCS administrators. The fact that the application for a restraining order related to her role as a teacher does not establish that she "used power made possible only because of her [position as a teacher]" in attempting to obtain the order. *See O'Connor*, 2016 WL 456336, at *4. The allegations in the amended complaint are simply insufficient to satisfy the requisite "under color of law" prong of a § 1983 claim.

### III. Conclusion

Ms. VanDerMey also argues that she is entitled to qualified immunity, and that the Pierces have failed to state a First Amendment retaliation claim against her. *See* Doc. 22 at 16–22. Because the Pierces' amended complaint fails to establish the requisite nexus between Ms. VanDerMey's application for a restraining order and the exercise of state authority, the Court need not address her other arguments. Ms. VanDerMey's motion for judgment on the pleadings as to count I of the amended complaint is granted.

Ms. VanDerMey also moved for a stay of discovery based on her assertion of the defense of qualified immunity. Doc. 23. Based on the Court's ruling that the Pierces have failed to state a § 1983 claim against Ms. VanDerMey, the Court will deny the motion for a stay of discovery as moot.

_____
Laura Fashing
United States Magistrate Judge